IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| KELLY R. ISAACS, | ) |
| | ) |
| Plaintiff, | ) Civil Case No. 08-1131-KI |
| | ) |
| vs. | ) OPINION AND ORDER |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

George J. Wall
1336 E. Burnside Street, Suite 130
Portland, Oregon 97214

    Attorney for Plaintiff

Kent S. Robinson
Acting United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902

Page 1 - OPINION AND ORDER

Stephanie R. Martz
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

   Attorneys for Defendant

KING, Judge:

Plaintiff Kelly Isaacs brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB").  I affirm the decision of the Commissioner.

## BACKGROUND

Plaintiff filed an application for DIB on December 10, 2004, alleging disability since May 23, 2003.  The applications were denied initially and upon reconsideration.  Plaintiff missed her first scheduled hearing but, after showing good cause, plaintiff, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on June 5, 2007.

On September 10, 2007, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on June 30, 2008.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or

mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that plaintiff suffered from a mood disorder which qualified as a severe impairment. However, the ALJ did not find that this impairment met or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P of part 404 of the Social Security Regulations. The ALJ concluded that plaintiff has no physical limitations and that she has the capacity to understand, remember and carry out simple instructions. Plaintiff can undertake and complete simple tasks. She should avoid close interaction with the public or with coworkers and she works best without close supervision. After questioning a vocational expert ("VE"), the ALJ concluded that someone with plaintiff's limitations could not perform her past relevant work but could work as a courier, office helper or surveillance system monitor.

## FACTS

Plaintiff, 38 years old at the time of her onset date, alleges disability beginning March 23, 2003, due to a mood disorder and bipolar disorder. Plaintiff graduated from college with a bachelor of science degree in criminology. She worked as a paralegal for her father's law firm for sixteen years or so and, when her father's law firm merged with a prominent Portland law firm, she continued to work as a paralegal for two years more. When plaintiff's husband left her after fifteen years of marriage, she went into a tailspin. She attempted to commit suicide in July of 2002 and she was admitted to a hospital for care for two days. She left the firm on disability leave in March 2003 for six months. She then attempted to return to work but remained only three months before leaving again.

Page 5 - OPINION AND ORDER

At the time of the hearing, plaintiff was working at a friend's bar as a bartender/waitress/cook for two days a week earning minimum wage and tips. She had also previously worked part-time as a blackjack dealer during the relevant period of time.

Plaintiff has a history of alcoholism and gambling, drug and shopping addictions.

## DISCUSSION

Plaintiff challenges the ALJ's evaluation of the treating and examining source opinions and the effect of that analysis on the ALJ's listing and residual functional capacity assessments. Plaintiff also requests that I consider evidence submitted to the Appeals Council but not the ALJ.

I.  Review of the Treating and Examining Source Opinions

Douglas Johnson, M.D., treated plaintiff from January through November 2004, when Dr. Johnson retired.

At the request of the Oregon Department of Human Services, Donna C. Wicher, Ph.D., evaluated plaintiff and diagnosed her with major depressive disorder, recurrent, in full remission; polysubstance abuse, presently in remission; and history of anorexia and bulimia. She assigned a global assessment of functioning at 65.[1] Dr. Wicher concluded that plaintiff "does not identify or demonstrate any significant psychological barriers to returning to full-time, sustained employment." Tr. 216. She found plaintiff had no difficulties in concentration, persistence or pace.

---

[1] The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to determine the individual's overall functioning. A GAF of 61 to 70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000) ("DSM-IV").

Stephen Stolzberg, M.D., evaluated plaintiff in June 2005 and provisionally diagnosed plaintiff with alcohol induced mood disorder, rule out bipolar disorder and rule out personality disorder. He assessed a GAF of 40.[2] Dr. Stolzberg recommended that plaintiff "look into going back to work" to help give her life more structure. Tr. 243.

In July 2006, Larisa Jeffreys, PMHNP, began treating plaintiff. She diagnosed bipolar I disorder and prescribed Lamictal.

At the suggestion of her attorney, Jon L. Benson, Psy.D., evaluated plaintiff in January and February 2007. Dr. Benson concluded, after examining plaintiff, that she would miss two or more days a month due to her impairments. He opined that she suffered from anxiety and appeared to have symptoms consistent with bipolar disorder or borderline personality disorder. Plaintiff demonstrated an average intelligence, but had trouble with math and with auditory memory. Dr. Benson found that she "has the ability to focus and attend to tasks for short periods of time, but seems to have a hard time maintaining persistence independently over time." Tr. 257.

Dr. Benson completed a Mental Residual Functional Capacity Assessment. He opined that she had "moderate"[3] difficulties in carrying out short and simple repetitive instructions or

---

[2] "Some impairment in reality testing or communications (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV at 34.

[3] "Moderate," as defined by the Mental Residual Functional Capacity Assessment, means "somewhat impaired (can be performed at 80 - 85% of expected or normal levels in terms of speed and accuracy of carrying out the task) but can be engaged in occasionally or frequently (1/3 to 2/3 of a day) but not constantly or continuously." Tr. 258.

tasks and in maintaining attention and concentration for two out of four hours a day.  He opined

plaintiff experienced "moderately severe"[4] problems in understanding and carrying out detailed

(3 or more steps) and in sustaining an ordinary routine, working in coordination with others and

completing a normal workday or work week without interruptions from symptoms.  Similarly,

Dr. Benson concluded plaintiff has moderately severe difficulties in accepting instructions and

feedback, getting along with coworkers, responding to changes in work routines and traveling to

unknown places.  He nevertheless concluded that a "routine, repetitive, simple, entry-level job"

would not be a "stressor which would exacerbate psychologically-based symptoms[.]"  Tr. 259.

In a short three sentence submission, Dr. Stolzberg wrote, "I have seen Ms. Isaac [sic]

twice in the past two years.  I reviewed the evaluation by Dr. Benson and I agree with his

conclusion that she would probably miss two days work per month from work [sic] due to her

mental illness.  I also agree with his diagnostic assessment."  Tr. 316.  Dr. Stolzberg saw plaintiff

twice in August 2006 and once in January 2007.

Finally, Robert J. McDevitt, M.D., a board certified psychiatrist and medical expert,

testified at the hearing before the ALJ.  He confirmed that plaintiff suffers from some sort of

mood disorder, although he quibbled with the bipolar diagnosis.  He noted the record contained

only Dr. Johnson's treatment notes and not any diagnoses and that the records reflected plaintiff

was stable while in Dr. Johnson's care.  He questioned Dr. Benson's conclusions with regard to

plaintiff's troubles with persistence and pace.  Dr. Benson based his conclusions on "the ARD

---

[4]"Moderately severe" is defined to mean "the activity is not totally precluded but is substantially impaired in terms of speed or accuracy of carrying out the task and can only be engaged in occasionally or seldom during an eight hour day; e.g., short durations (5 - 15 minutes) not totaling more than two hours in an eight hour day."  Tr. 258.

Page 8 - OPINION AND ORDER

test," which was not a test with which Dr. McDevitt was familiar, and plaintiff otherwise tested in the average range. In addition, Dr. McDevitt noted that plaintiff had not had regular contact with any of these doctors, with the exception of Dr. Johnson. Dr. McDevitt also commented that alcoholism is often a problem with people who have affective disorders.

The ALJ gave significant weight to Dr. McDevitt's testimony and to Dr. Wicher's conclusion that plaintiff could work. She gave little weight to Dr. Benson's conclusions about plaintiff's restrictions or to Dr. Stolzberg's agreement about the number of days plaintiff would miss per month.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. Morgan v. Comm'r of Social Security Admin., 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ gave specific and legitimate reasons for rejecting the opinion of Dr. Benson.[5] The ALJ first noted that Dr. Benson relied on the "ARD" test, which was not a test recognized by the medical expert, Dr. McDevitt. Additionally, Dr. Benson's conclusions about plaintiff's limitations did not match his report. Dr. Benson opined that plaintiff would have "moderate" and "moderately severe" problems with understanding and memory, sustained concentration and persistence, and social interaction. However, plaintiff's IQ was average and although she had some troubles with the memory tests, her visual memory was average. With regard to the attention and concentration tests, plaintiff scored in the average range, with the exception of one portion of the Trail Making Test. As for her social limitations, the ALJ pointed out that plaintiff worked as a waitress/cook/bartender two days a week during the relevant period. Although plaintiff's boss complained about plaintiff's difficulties making change and filling drink orders accurately, as well as arriving at work on time, she did not mention that plaintiff had any difficulties interacting with the clientele. These are specific and legitimate reasons to reject a treating source's opinion. Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) (specific and legitimate reason when opinion inconsistent with clinical evaluation); Ngyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996) (opinion contradicted by treatment notes); Morgan, 169 F.3d at 602 (physician's opinion may be disregarded when reliant on complaints that have been "properly discounted").

With regard to Dr. Stolzberg's opinion agreeing with Dr. Benson's conclusions about plaintiff's likely absences, the ALJ gave Dr. Stolzberg's opinion little weight. Dr. Stolzberg

---

[5]Plaintiff asserts clear and convincing is the applicable standard since she believes no physician contradicted Dr. Benson's functional limitation findings. Dr. Wicher, however, arrived at conflicting conclusions about plaintiff's functional limitations.

Page 10 - OPINION AND ORDER

recommended that plaintiff return to work to assist in treating her mood disorder, which is inconsistent with his later opinion that plaintiff would miss work due to her impairments. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (inconsistencies between a doctor's opinion and his notes is a clear and convincing reason to disregard the opinion).

Plaintiff contends that Dr. McDevitt found plaintiff was markedly impaired with regard to her memory, persistence and pace. It is true that Dr. McDevitt testified plaintiff's functioning would constitute marked impairment if Dr. Benson's opinion were accepted. However, as I explained above, the ALJ properly rejected Dr. Benson's opinion. Similarly, plaintiff speculates that the testimony of Dr. McDevitt and the opinion of Dr. Wicher would be different if they had read the lay witness statements from plaintiff's daughter and employer. The ALJ, however, noted that plaintiff's daughter's observations might be indicative of plaintiff's behavior at home but conflicted with plaintiff's work performance at the bar. Furthermore, the ALJ found plaintiff's employer's letter relevant to plaintiff's ability to function in the rather high-stress environment of a bar, but not necessarily relevant to plaintiff's ability to do "simpler types of work with less social interaction." Tr. 36. There is no reason to believe Dr. McDevitt or Dr. Wicher would change their opinions on the basis of this properly rejected lay witness testimony.

Since the ALJ gave specific and legitimate reasons for rejecting Dr. Benson's and Dr. Stolzberg's opinions, the ALJ's conclusion that plaintiff did not meet Listing 12.04 was supported by substantial evidence in the record. Similarly, since the ALJ properly rejected Dr. Benson's opinion, the residual functional capacity the ALJ crafted contained all of plaintiff's limitations and restrictions that were supported by substantial evidence. As a result, I affirm the

ALJ's conclusion that plaintiff can perform jobs in the national economy other than her past work.

II.        Additional Evidence Presented to the Appeals Council

Plaintiff relies on a subsequent opinion of Dr. Benson's, written in April 2008, as well as plaintiff's father's supplemental affidavit to support her assertion that the ALJ erred in finding her not disabled.  Dr. Benson saw plaintiff two times in 2008 and wrote that he continues to believe plaintiff is "unable to maintain regular and sustained employment on a five day work week for eight hours a day." Tr. 326.  He also elaborated on his earlier evaluation, stating,

> [Plaintiff] appears to have significant difficulty in maintaining focus over time. Her ability to attend and concentrate to tasks is inconsistent.  She can focus on certain tasks effectively, and then become confused and disorganized on tasks that she has been able to perform well in the past.  She is not able to multitask.  She becomes very anxious and frustrated when learning new tasks and has poor retention of new information.

Tr. 325-26.

Plaintiff's father described plaintiff's financial difficulties and her irresponsible handling of money.

Additional evidence presented to the Appeals Council, but not seen by the ALJ, may be considered in determining if the ALJ's denial of benefits is supported by substantial evidence. Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000).  The court may not hold on the basis of the additional evidence, however, that the claimant is entitled to an immediate award of benefits. The case must be remanded to the ALJ for consideration of the new evidence, rebuttal by the Commissioner, and any additional testimony needed because of the new evidence.  Id.  In

evaluating the evidence, the question is whether it has a "reasonable possibility of changing the outcome of the" ALJ's decision.  Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984).

Plaintiff's father's discussion about plaintiff's financial irresponsibility would not have changed the ALJ's determination about plaintiff's residual functional capacity since the testimony has no relevance to plaintiff's functional limitations.  Dr. McDevitt, in his testimony, already accepted that plaintiff's shopping addiction could be a symptom of her disorder.  As a result, the additional testimony does not have a reasonable possibility of changing the outcome of the ALJ's decision.

Similarly, Dr. Benson's April 2008 opinion was not based on any new testing and, since it came after the ALJ's adverse decision, is entitled to little weight.  Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989).  As a result, I see no reasonable possibility it would change the outcome of the ALJ's decision.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this _____18th_____ day of November, 2009.

                                      ___/s/ Garr M. King_____
                                      Garr M. King
                                      United States District Judge